IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| EDWIN SCOTT O/B/O ) | |
| PRESTON E. SCOTT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 1:04cv338-SRW |
| ) | WO |
| JO ANNE B. BARNHART, Commissioner ) | |
| of Social Security, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OF OPINION**

Edwin Scott o/b/o Preston E. Scott[1] brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of a decision by the Commissioner of Social Security ("Commissioner") denying his application for Supplemental Security Income under the Social Security Act. The parties have consented to entry of final judgment by the Magistrate Judge pursuant to 28 U.S.C. § 636(c). Upon review of the record and briefs submitted by the parties, the court concludes that the decision of the Commissioner is due to be affirmed.

**BACKGROUND**

On December 29, 2000, plaintiff filed an application for Supplemental Security Income (SSI). On June 6, 2002, after the claim was denied at the initial administrative levels, an ALJ conducted an administrative hearing. The ALJ rendered a decision on July 26, 2002, in which he found that plaintiff, who was seven years old at the time of the decision, had the

---

[1] Preston Scott, the minor child on behalf of whom the application for benefits was filed, will be referred to as the "plaintiff" in this memorandum of opinion.

severe impairment of attention deficit hyperactivity disorder but was not under a disability as defined in the Social Security Act. R. 28-29. On February 12, 2004, the Appeals Council denied plaintiff's request for review and, accordingly, the decision of the ALJ became the final decision of the Commissioner.

## STANDARD OF REVIEW

The court's review of the Commissioner's decision is narrowly circumscribed. The court does not reweigh the evidence or substitute its judgment for that of the Commissioner. Rather, the court examines the administrative decision and scrutinizes the record as a whole to determine whether substantial evidence supports the ALJ's factual findings. Davis v. Shalala, 985 F.2d 528, 531 (11th Cir. 1993); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Substantial evidence consists of such "relevant evidence as a reasonable person would accept as adequate to support a conclusion." Cornelius, 936 F.2d at 1145. Factual findings that are supported by substantial evidence must be upheld by the court. The ALJ's legal conclusions, however, are reviewed *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. Davis, 985 F.2d at 531. If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, the ALJ's decision must be reversed. Cornelius, 936 F.2d at 1145-46.

## DISCUSSION

The plaintiff challenges the Commissioner's decision, arguing that: (1) the Appeals Council erred by failing to remand the case to the ALJ to consider newly discovered

evidence; (2) the ALJ improperly substituted his opinion that plaintiff only suffered from oppositional defiant behavior when his treating psychiatrist diagnosed oppositional defiant disorder; and (3) the ALJ failed to develop the record fully by failing to obtain medical records from Dr. Joe Frank Smith concerning plaintiff's persistent otitis media.  For the reasons set out below, the court finds plaintiff's claims to be without merit..

1.     Newly Discovered Evidence

After the ALJ rendered his decision in this case on July 26, 2002, the Appeals Council received additional medical records from Dr. Shakir R. Meghani dated August 16, 2002 through November 21, 2002.  R 8; see also R 176-80 (additional records).  The Appeals Council considered the additional evidence, but found that the information did not provide a basis for challenging the ALJ's decision and, thus, denied the request for review.  R 5-6.

Plaintiff appeals the Appeals Council's decision denying review. Thus, the court must review the record as it was before the Appeals Council, which included the newly submitted records from Dr. Meghani.  See Fry v. Massanari, 209 F.Supp.2d 1246, 1252 (N.D. Ala. 2001) (citing, *inter alia*, Falge v. Apfel, 150 F.3d 1320, 1324 (11th Cir.1998) (Where the claimant specifically challenges the decision of the Appeals Council to deny review, the record for the district court's consideration will include any new evidence submitted by the claimant after the ALJ's hearing and decision.).  Here, plaintiff is not challenging a decision by the Appeals Council not to consider new evidence under 20 C.F.R. § 404.970(b), but instead, he challenges the Appeals Council's decision, after evaluation of the new evidence, not to review the ALJ's decision. "When a district court is hearing such a challenge, its duty

... is a three-fold inquiry. It must find whether the claimant has proven 'that (1) there is new, non-cumulative evidence, (2) the evidence is "material," that is, relevant and probative so that there is a reasonable probability that it would change the administrative result, and (3) that there is good cause for the failure to submit the evidence at the administrative level.'" Fry, 209 F.Supp.2d at 1252 (citing Keeton v. Department of Health and Human Services, 21 F.3d 1064, 1067-1068 (11th Cir.1994)).

The evidence submitted to the Appeals Council consists of a psychiatric evaluation conducted on August 16, 2002 (R. 178), and progress notes from follow-up visits on September 26, 2002 (R. 177) and November 21, 2002 (R. 176). During the August psychiatric evaluation, "[t]he biggest concern" was that plaintiff was losing weight. Plaintiff's grandmother also reported that he "was not sleeping good, he cannot control his emotions, he has mood swings, obvious highs and downs," and that he "has significant anger and rage problems." R. 178. Dr. Meghani noted, *inter alia*, that "Grandmother was diagnosed with manic depressive illness," "Mother has been diagnosed with 'ADHD,'" and "Great-grandmother was diagnosed with bipolar mood disorder." Id. He wrote, "The patient has symptoms consistent with ADHD. Medication helps. Additionally, there have been suggestions for bipolar being the likely scenario." Id. at 179. Dr. Meghani's diagnosis on Axis 1was ADHD, along with "bipolar mood disorder (rule out)." Id. He added Zyprexa[2]

---

[2] "Zyprexa is indicated for the treatment of schizophrenia and of acute manic episodes of bipolar disorder." Castille v. Barnhart, 2002 WL 1900815, *6 (E.D.La. 2002) (unpublished) (citing Physicians' Desk Reference 1974 (56th ed.2002)).

to plaintiff's medication. Id.

Dr. Meghani's progress note for September 26, 2002, indicated that plaintiff was "resting better and eating better. He occasionally has ups and downs but has improved overall since the last time. The anger is not as drastic, according to the father and the teacher also feels that he is doing better." R. 177. Plaintiff's November 21, 2002 progress note reflects that he was in for medication management and that he had some problems with "defiance," "disobeying" and occasional "fits," and did not get along with his father's girlfriend. The doctor did not make any changes in plaintiff's medication and indicated that he would refer plaintiff for counseling and therapy, with a follow-up visit in three months. R. 176.

After a thorough review of the record, the court concludes that – even assuming that this evidence is new and non-cumulative, and that there is good cause for the failure to submit the evidence at the administrative level – the evaluation and progress notes from Dr. Meghani are not material, as there is not a reasonable probability that they would change the administrative result. Dr. Meghani's comments do not establish that plaintiff has a severe impairment (bipolar disorder) that was not considered by the ALJ. Instead, these records at best show that Dr. Meghani noted bipolar disorder as a potential diagnosis requiring further evaluation in the future. See Johns v. Jarrard, 927 F.2d 551, 555 n. 1 (11th Cir. 1991) (Use of "rule out" diagnosis meant that patient needed to be assessed for possibility of that diagnosis.); see also Gough v. Metropolitan Life Ins. Co., 2003 WL 23411993, *11 (M.D.Tenn. 2003) (unpublished) (Doctor did not definitively diagnose plaintiff with

psychological disorder; instead, "use of the common clinical abbreviation 'R/O' for 'Rule Out' indicates that she lacked sufficient information to diagnose Plaintiff with either condition at the time of her report."); Id. at n. 7 ("Although not part of the formal DSM-IV convention, 'many clinicians also use the term "Rule Out" just prior to a diagnosis to indicate that not enough information exists to make the diagnosis, but it must be considered as an alternative.'") (citation omitted). Dr. Meghani's "rule out" diagnosis of bipolar disorder is insufficient to establish the existence of a severe impairment in this case. See Simpson v. Commissioner, Social Sec. Admin, 2001 WL 213762, *8 (D.Or. 2001) (unpublished) (No error in failing to find a severe impairment on the basis of "rule out" diagnosis; claimant cannot meet burden of proof on the basis of diagnoses that merely fail to rule out potential disorders.). This is particularly true where, as defendant points out, Dr. Meghani made no further reference to this potential diagnosis in his subsequent progress reports.[3]

Further, Dr. Meghani's records do not assess any new restrictions or limitations in

---

[3] Dr. Meghani's decision to prescribe medication for plaintiff that may be used to treat bipolar disorder does not alter the fact that he arrived at only a "rule out" diagnosis of this disorder in the records submitted. The court notes that Zyprexa appears to have a role in treating people without a clear diagnosis. See http://www.psycheducation.org/depression/meds/olanzapine.htm (last visited May 9, 2006) ("Because it can treat both mood symptoms and psychotic symptoms, [Zyprexa] has a role also in people where the diagnosis is not clear. The doctor does not have to be certain whether you have bipolar disorder or schizophrenia or even "depression with psychotic features": all will respond. It is like a "broad-spectrum antibiotic" that doctors can use before they are certain just which bacteria you have. Later more specific medications can be used."). Zyprexa can also cause weight gain, id., which may have been a factor since plaintiff complained of experiencing significant weight loss. The court declines to speculate on the reasons that Dr. Meghani prescribed Zyprexa; the point is that, whatever those reasons (which are not necessarily limited to a diagnosis of bipolar disorder), he did not in fact diagnose plaintiff with bipolar disorder in the records before the court.

addition to those the ALJ already considered.  See Magill v. Commissioner of Social Sec., 147 Fed.Appx. 92, 96 (11th Cir. 2005).  Nor is it clear that the new evidence relates to the time period before the ALJ's determination, particularly since the records contain no discussion of whether plaintiff might have required further evaluation for bipolar disorder prior to that ruling.  See 20 C.F.R. § 404.970(b); Otto v. Commissioner of Social Security, 2006 WL 700934, *3 (11th Cir. 2006) (unpublished) (Test results immaterial where they were from a different time period and contained no discussion of what plaintiff's condition might have been as of the date of the determination.).  In sum, the additional evidence does not provide a reasonable possibility that the ALJ would change his decision, and it is therefore immaterial.

2. Oppositional Defiant Disorder

Plaintiff contends that the ALJ improperly substituted his opinion that plaintiff only suffered from oppositional defiant behavior when his treating psychiatrist diagnosed oppositional defiant disorder.[4]  The court cannot agree.  While the ALJ did use the term "oppositional defiant behavior"in describing the plaintiff, R. 23-24, Dr. William Barron,

---

[4] "Oppositional Defiant Disorder is a recurrent pattern of negativistic, defiant, disobedient, and hostile behavior toward authority figures that persists for at least six months and is characterized by the frequent occurrence of at least four of the following behaviors: losing temper, arguing with adults, deliberately doing things that will annoy other people, blaming others for his own mistakes or misbehavior, being touchy or easily annoyed by others, being angry and resentful, or being spiteful or vindictive. The behaviors must occur more frequently than is typically observed in individuals of comparable age and developmental level and lead to significant impairment in social, academic, or occupational functioning." Goodman ex rel. Chambers v. Barnhart, 247 F.Supp.2d 1249, 1251 (N.D. Ala. 2003) (citing DSM-IV).

plaintiff's treating pediatrician, and Dr. Randy Jordan, a licensed clinical psychologist who treated the plaintiff, also used this term.  See, e.g., R. 113 ("Patient is felt to have ADHD and oppositional defiant behavior.") (Barron); R. 145 ("There is hyperactivity, inattention, impulsivity, and oppositional defiant behavior.) (Jordan); see also R. 114, 115, 116, 117. The ALJ did not err in adopting the same language used by plaintiff's treating physicians.

Plaintiff further argues that the ALJ improperly substituted his opinion that plaintiff had minimal limitations attributed to this disorder, and improperly rejected the diagnosis of oppositional defiant disorder.  Again, the court cannot agree.  Dr. Jordan's diagnostic impression was ADHD, with mild oppositional defiant disorder (313.81) that was secondary to the ADHD.  Dr. Jordan placed no explicit limitations on plaintiff because of this mild disorder.  Further, the ALJ did not reject Dr. Jordan's diagnosis.  Rather, he thoroughly discussed plaintiff's "oppositional defiant type behavior" in his review of testimony from plaintiff's father, the treatment records from Dr. Barron and Dr. Jordan, and the teacher questionnaires. R-23-25.  The ALJ's decision that plaintiff had a less than marked limitation in the domain of interacting and relating with others, despite the fact that he had mild oppositional defiant disorder secondary to his ADHD, is supported by substantial evidence.

3.  Otitis Media

Plaintiff contends that the ALJ erred in failing to obtain medical records from Dr. Joe Frank Smith concerning plaintiff's persistent otitis media (middle ear infection).  "It is well-established that the ALJ has a basic duty to develop a full and fair record."  Ellison v. Barnhart, 355 F.3d 1272, 1276 (11th Cir. 2003)(citing 20 C.F.R. § 416.912(d) and Brown v.

Shalala, 44 F.3d 931, 934 (11th Cir.1995)). "Nevertheless, the claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim." Id. Further, although the ALJ has a duty to develop a full and fair record, there must be a showing of prejudice before the court will find that the claimant's right to due process has been violated to such a degree that the case must be remanded to the Secretary for further development of the record. Hurley v. Commissioner of Social Sec., 147 Fed.Appx. 103, 105 (11th Cir. 2005)(unpublished). Before ordering a remand, the court reviews the administrative record as a whole to determine if it is inadequate or incomplete or shows the kind of gaps in the evidence necessary to demonstrate prejudice. Id. (citing Graham v. Apfel, 129 F.3d 1420, 1423 (11th Cir.1997)).

Dr. Elizabeth Powell's notes dated January 8, 1999 reflect that plaintiff had serious, persistent otitis media at that time and that she planned to refer plaintiff to Dr. Joe Frank Smith "for further evaluation and possible tympanostomy tubes." R. 119. Later, plaintiff apparently received tympanostomy tubes, as subsequent medical records from plaintiff's pediatrician reflect that such tubes were in place. See, e.g., R. 105 (1/4/01); R. 168 (1/26/01). However, no medical records from Dr. Smith are in the record before the court.

Plaintiff himself, despite being represented by counsel, never attempted to submit treatment records from Dr. Smith to the ALJ, the Appeals Council, or to the court. This is so despite the fact that the ALJ wrote to plaintiff's counsel on December 6, 2001, requesting "[a]ll medical records ... from one year prior to the alleged onset date to the present and any other relevant medical ... records not already in file." R. 45. An ALJ will not be deemed to

have failed to develop the medical record where he attempted to do so by requesting medical records, and plaintiff failed to respond.  Ellison, 355 F.3d at 1276 (ALJ attempted to develop the medical record by requesting on two occasions that plaintiff furnish him medical records, but plaintiff failed to do so – thus, plaintiff was not entitled to relief on his contention that the ALJ failed to adequately develop the medical record.) (citing 20 C.F.R. § 416.916 (stating that "[w]hen you fail to cooperate with us in obtaining evidence, we will have to make a decision based on the information available in your case")).

In addition, plaintiff has not explained how the fact that Dr. Smith's records are missing actually prejudiced his case, other than to speculate that "this disorder would cause limitations, such as pain, that would affect Preston's ability to function."  Plaintiff's Brief at 10.  Indeed, plaintiff's counsel had the opportunity at the hearing to discuss the significance of these records, but did not point out any reason for the ALJ to pursue further inquiry concerning plaintiff's history of otitis media:

> ALJ:    Does he have any physical limitations?
> WTN:    Not that I'm aware of.
> ATTY:   He does tend to have repeated ear infections.
> ALJ:    Well, that's –
> WTN:    Right.  He does –
> ALJ:    I don't think that's going to meet a medical listing.  Do you?
> ATTY:   I don't think so.  They haven't determined any hearing loss, but that's the only significant physical.

R. 184.  Thus, absent a showing of actual prejudice, the court cannot conclude that remand is warranted to obtain these records.  See Kilcrease v. Barnhart, 347 F.Supp.2d 1157, 1162 M.D. Ala. 2004) (Plaintiff "has not shown why it would be relevant for him to [obtain

medical records] or what difference it would have made had he done so.").

## CONCLUSION

Accordingly, upon review of the record as a whole, the court concludes that the decision of the ALJ should be AFFIRMED. A separate judgment will follow.

DONE, this 11th day of May, 2006.

/s/ Susan Russ Walker  
SUSAN RUSS WALKER  
UNITED STATES MAGISTRATE JUDGE